Armen R. Vartian (Bar No. 155766)
armen@vartianlaw.com
1601 N. Sepulveda Blvd. #581
Manhattan Beach, CA 90266
310-372-1355 phone
866-427-3820 fax
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| USGB, LLC.<br>                Plaintiff,<br>      vs.<br><br>REGAL ASSETS, LLC,<br>KELLY FELIX, an individual, and<br>DOES 1-200,<br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br>**COMPLAINT FOR:**<br>**(1) FALSE ADVERTISING, 15 U.S.C. §1125(a);**<br>**(2) FALSE ADVERTISING, Cal. Bus. & Prof. §17500 *et seq.*; and**<br>**(3) UNFAIR COMPETITION, Cal. Bus. & Prof. §17200 *et seq.*** |

USGB, LLC, by its attorney Armen R. Vartian, hereby submits this Complaint, and alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

1. This action arises under 15 U.S.C. §1125, and this Court has original jurisdiction of Plaintiff's federal and state claims under 28 U.S.C. §1331, and of Plaintiff's California state law claims also under principles of pendent jurisdiction. This Court also has original jurisdiction of Plaintiff's federal and state claims under 28 U.S.C. §1332 due to diversity of the parties and the amount in controversy exceeds $75,000.

2. Venue is appropriate because Defendant Regal Assets is registered in California and has its principal place of business in Los Angeles County,

Defendant Kelly Felix resides in San Diego County but is employed by Defendant Regal Assets in Los Angeles County, Defendants DOES 1-200 are affiliates of Defendant Regal Assets, Plaintiff does business in this District, and a substantial portion of the events, omissions and property which is the subject matter of this action are located in Los Angeles County.

## PARTIES

3.  Plaintiff USGB, LLC. ("U.S. Gold Bureau"), is a Texas limited liability company with principal place of business in Austin, TX.

4.  Defendant REGAL ASSETS, LLC ("Regal") is, upon information and belief, a California limited liability company with principal place of business in Universal City, CA.

5. Defendant KELLY FELIX ("Felix") is, upon information and belief, an individual residing in San Diego County, CA, and is a part owner of Regal Assets, as well as the owner, operator, and creator of certain affiliate websites, including but not limited to http://imfsite.org; and the affiliate marketing website www.bringthefresh.com, through which he solicits "affiliates" for Regal Assets.

6.  Defendants DOES 1-200 ("DOES 1-200") are, upon information and belief, affiliate individuals or entities engaged by Regal who are located in California and elsewhere, which Plaintiff is, at this time, unable to identify.

## GENERAL ALLEGATIONS

7.  U.S. Gold Bureau markets and sells gold, silver and platinum coins and bars as investments, including precious metals IRAs. U.S. Gold Bureau has been operating in the precious metals industry for over ten years and is registered as an official Precious Metals Dealer with the State of Texas, Department of Public Safety, Office of Consumer Credit Commissioner. U.S. Gold Bureau is an authorized dealer for the Numismatic Guaranty Corporation and the Professional Coin Grading Service.

8. Regal Assets sells gold and silver coins as investments, including precious metals IRAs.  Regal markets its products directly and, upon information and belief, by entering into "affiliate" agreements with DOES 1-200 to advertise and attract customers on Regal's behalf. Upon information and belief, DOES 1-200 advertise Regal's goods and services and refer customers to Regal in exchange for compensation from Regal.

### *The Purported "Review" Websites*

9. Regal induced, and continues to induce, DOES 1-200 to post content created by Regal and its agent in the guise of online review sites (the "Websites"), that purport to compare U.S. Gold Bureau to Regal on the basis of objective, unbiased reviews. The Websites specifically target U.S. Gold Bureau and assert that Regal is the only safe and reliable company from which to purchase precious metals. The Websites represent themselves to be third parties providing unbiased reviews of companies selling gold and silver for investment.

10. Regal's Marketing Director, Kelly Felix, maintains websites at the domain addresses bringthefresh.com and kellyfelix.com, where he invites individuals to become Regal "affiliates", and extols the financial rewards given to "affiliates" for posting materials prepared by Regal itself.

11.  At kellyfelix.com, Felix boasts of how lucrative the Regal Assets Affiliate program is, paying up to $100 per "qualified lead" and an additional 3% of gross sales from referrals. Felix states that through his own Websites he has had "a lot of success with both quality leads and sales. Somewhere around $250k in pending deals in the last few days alone!"

12.  Regal also owns and operates two websites for its affiliate program: http://www.regalgoldaffiliates.com and http://www.regalassets.com/affiliate. While both websites require affiliates to login to access the sites, the home page of the sites both promote the affiliate program and recruit applicants. On http://www.regalassets.com/affiliate, Regal states that affiliates "[e]arn 3% on

every transaction, for the life of the customer, even if they call in", as well as "up to $30 per qualified lead".

13.   Regal further offers Affiliates a percentage of sales that are the result of any lead generated by a separate Affiliate who was recruited to the Affiliate Program by the first Affiliate.

14. The Websites include, but are not limited to, the 36 following:

1) http://imfsite.org

2) http://bestgoldiras.net

3) www.bestgoldiracompany.com

4) www.goldbackediras.org

5) http://goldiniras.net

6) http://goldinvestmentcompanies.org

7) www.401kgoldinvesting.org

8) www.401kgoldira.org

9) www.401kgoldrollover.net

10) www.401krollovertogold.net

11) www.401ksilverinvesting.com

12) www.buygoldbricks.net

13) www.buygoldbullionbarsonline.org

14) www.gold401krollover.org

15) www.goldbacked401k.com

16) www.goldbuyingguide.net

17) www.goldcoinsforsales.net

18) www.goldinvestmentcompanies.org

19) www.goldiracustodian.net

20) www.goldirasretirement.com

21) www.goldirasrollover.com

22) www.physicalgoldira.net

23) www.preciousmetalsiras.org

24) www.reputablegolddealers.org

25) www.rollingover401kgold.com

26) www.rollover401kgold.com

27) www.silverbarsforsales.org

28) www.silverbullionforsales.com

29) www.silvercoinsforsales.com

30) www.bestgoldiracustodians.com

31) www.buygoldbullionbarsonline.org

32) www.silverirarollover.net

33) www.goldiracustodians.org

34) http://goldiraguide.org

35) http://iraplanningwithgold.com

36) http://goldira401k.com

15.  Regal enters into a written "Affiliate Program Agreement" with each of the Affiliate DOES 1-200. The Affiliate Program Agreement contains the following provisions:

Affiliates are compensated for generating leads and purchases through Regal Assets using their unique Affiliate campaign ID. Leads or purchases can be generated by placing the lead capture form provided in the "Resources" section of the Regal Website [www.regalgoldaffiliates.com] on Affiliate sites or offers and or by using the dedicated links provided to the Affiliate upon being accepted into the Affiliate program.

The Owner [Regal] will make available to the Affiliate through the Regal Website lead capture forms, swipe files, text ads, and banner advertisements to be placed on the Affiliate's sites or offers.

*Misleading and False Content on the Websites*

16. The Websites disguise the owner/operator of the Website. The Websites contain biographies, accompanied with photographs, which misstate the identity and credentials of the "reviewer".

17. The Website http://goldira401k.com claims to be operated by an "Anthony Edwards" and provides a picture representing to be Anthony Edwards. However, Anthony Edwards is not in fact the owner/operator of the Website, and the picture is actually that of Rene Esline, a French citizen who has no connection with the precious metals business and, on information and belief, is unaware that his image has been appropriated in this way.

18. Some of the Websites, including http://bestgoldiras.net and www.bestgoldiracompany.com, state that U.S. Gold Bureau has a B rating with the Better Business Bureau, which is false. In fact, U.S. Gold Bureau has an A+ rating with the BBB.

19. The Websites all refer to an Inc. Magazine survey that ranked Regal at #20 on a list of "financial services" companies, without explaining that (a) Inc. did not verify whether Regal was, in fact, a "financial services" company; (b) rankings were based entirely on three-year growth figures submitted by the companies themselves and not verified by Inc.; (c) Regal made Inc.'s list only because its reported revenues from 2009 were tiny compared to its growth and, therefore, misleading in comparison to actual sales.

*Fraudulent Acquisition of Consumer Information*

20. The Websites mislead consumers into selecting links that send their personal information, including name, email address, and phone number to Regal and request Regal products be sent to them. The Websites camouflage these links so that it appears the viewer is clicking a link to another page on the reviewer's website, requesting a "free gold investment kit" or engaging in further contact with the DOES 1-200 creator of the Website or U.S. Gold Bureau itself, and not Regal.

21.  The Websites cause consumers to send their personal contact information to Regal, and unknowingly request phone calls, emails, and physical packages to be sent from Regal. Some of the Websites, such as http://www.bestgoldiracompany.com/contact-us/ have a contact page that requests the consumer's name and email address, but is not clear whether that information will go to the "independent" creator of the website (claiming to be "a professional review site") or Regal.

22.  Upon information and belief, Regal initiates telephone calls with each consumer that supplies any information through the review Websites, and solicits the consumer to buy gold and silver coins.

23.  At the website, http://www.regalgoldaffiliates.com, owned and operated by Regal, Regal tells potential affiliates that the individuals whose personal contact information is provided by the Affiliate DOES 1-200 Websites are then solicited by Regal Assets: "Our extensive tracking shows you what's happening with your leads in real time. You can see who called them, when, and what the outcome was (sent investment kit, callback arranged, sale completed, etc)".

*The Websites' Failure to Disclose the Regal Assets Connection*

24. Some of the Websites are operated by and/or controlled by Regal itself. For example, Felix boasts on his website that despite being "a part owner of Regal Assets" he also "run[s] traffic through my own affiliate accounts, with my own affiliate sites". Upon information and belief, one such site is imfsite.org, which purport to provide independent reviews and then recommend Regal, but is in fact owned by Regal through Felix.

25. Regal, through Felix, also offers to create the "affiliate" Websites for prospective "affiliates", such as on bringthefresh.com, where Felix states "instead of just sharing my strategies with you via my monthly videos … WHY DON'T I JUST DO IT FOR YOU?  What I mean is…why don't I just pretend YOUR site is MY site. And I'll build it FOR YOU."

26.  At http://www.regalgoldaffiliates.com, Regal states that it will provide "high converting, lead capture forms that you can just plug in to your site" and that it is "also constantly adding new attention grabbing creative for you to use on your website(s)."

27.  Upon information and belief, to the extent the Websites aren't actually owned and operated by Regal, the content on the Websites is primarily provided by Regal, often through Felix.

28. Upon information and belief, to the extent that the "affiliate" Websites aren't actually owned and operated by Regal, Regal pays DOES 1-200 a fee for every consumer who provides personal information through the Websites, and additional compensation for consumers who ultimately purchase coins from Regal. The Websites do not disclose this, or that they recommend only Regal because only Regal compensates them for doing so.

29. To the extent that any of the Websites says anything at all concerning compensation, they say only that "We are a professional review site that receives compensation from the companies whose products we review and recommend. We are independently owned and the opinions expressed here are our own." Such disclosures are not clear and conspicuous, and are generally located on a different page from the dealer reviews or in very fine print.

30.  The Websites fail to fully disclose that there "exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement" as is required by the FTC Disclosure rule, codified at 16 C.F.R. §255.5. The above "disclosure" implies that multiple companies compensate the creators of the Websites, when only Regal, the company recommended, or advertised, is providing any compensation.

31.  The Websites fail to "clearly and conspicuously disclose either the payment or promise of compensation *prior to* and in exchange for the endorsement or the fact that the endorser knew or had reason to know or to believe that if the

endorsement favored the advertised product some benefit … would be extended to the endorser". 16 C.F.R. §255.5. Upon information and belief, the creators of the Websites knew they would be compensated for recommending Regal prior to creating the Website and endorsing Regal.

32.  DOES 1-200 fails to sufficiently disclose their connection to Regal, and does so intentionally to mislead the viewers into believing that DOES 1-200 are unbiased "professional review" websites. Many of the Websites contain identical disclosures, or disclosures that contain some of the same intentionally misleading language. Upon information and belief, Regal knew of, encouraged, and assisted in creating this failure to disclose because Regal would obtain fewer requests for "free gold investment kits" and thus fewer consumer telephone numbers if consumers knew the reviews were not unbiased and were mere marketing tools for Regal.

33. In addition, the Websites fail to identify that Regal is the only company compensating DOES 1-200 for their reviews, and that DOES 1-200 do not recommend any gold and silver coin dealer other than Regal. DOES 1-200, with the knowledge and endorsement of Regal, are deliberately failing to provide this disclosure because of the conflict of interest that such disclosure would reveal, a conflict that would drive consumers away from Regal.

34.  Upon information and belief, Regal instructed DOES 1-200 to represent themselves as third parties and engage in the above specified unlawful, unfair and deceptive behavior, and Regal has, at all times, been aware of this practice.

35.  Upon information and belief, Regal tracks the performance of DOES 1-200 for purposes of determining their compensation, and knows which customers are drawn to Regal through which of the Websites.  Regal benefits from the above specified unlawful, unfair and deceptive behavior of DOES 1-200 by receiving customers who believe misinformation about U.S. Gold Bureau, and by receiving the personal contact information of Website viewers without their permission.

36.  DOES 1-200 acts, at all times, as Regal's agents and for Regal's benefit and Regal is responsible to U.S. Gold Bureau for any unlawful acts or omissions by DOES 1-200.

*Other Proceedings Involving the Regal "Affiliate" Program*

37. Regal is currently a defendant in at least four other lawsuits alleging that its "affiliate" program is unlawful. These include American Bullion, Inc. v. Regal Assets LLC, 14-CV-01873 (C.D. Cal. filed March 12, 2014), Goldline LLC v. Regal Assets LLC, 14-CV-03680 (C.D. Cal. filed May 13, 2014), Swiss America Trading Corporation v. Regal Assets LLC, 14-CV-04960 (C.D. Cal. filed June 25, 2014), and White Horse Capital, LLC v. Regal Assets LLC, EC 062201 (Superior Court, Los Angeles County, filed March 10, 2014).

38. The court in the American Bullion case held that the plaintiff stated claims against Regal under California Business & Professions Code §17200 read with §§17203 and 17205, and the Court entered judgment against Kelly Felix on July 15, 2014 enjoining him to "immediately delete or cause to be deleted those websites, webpages, blogs, reviews, postings and online content that are set forth on Exhibit A" until such time as those websites include the following disclosure:

**The owners of this website are paid to recommend Regal Assets. The content on this website, including the positive review of Regal Assets, the negative review of its competitors and the other information, is not independent or neutral. It was provided by Regal Assets.**

(emphasis in original). The Court's Exhibit A includes 25 of the 36 Websites listed in Paragraph 13 hereof, to wit, Websites numbered 1 – 4, 6 – 11, 13 – 19, 22, 26, 30 – 31, and 33 – 36, but upon information and belief the Websites remain unchanged notwithstanding the Court's order.

39.   On November 17, 2014, the Court in Case No. 2:14-cv-01873-DDP-AS entered a preliminary injunction against Regal Assets, LLC and its owner, Tyler Gallagher. The injunction compels Regal to contact all members of its Affiliate program, which Regal has identified contains more than 2,400 individuals, and notify them of the lawsuit, the activities contained on the Websites that form the basis of the lawsuit, and the fact that the Court has determined American Bullion is likely to prevail on its claims against Regal and Gallagher. Further, the injunction requires Regal to cease making any payments to the Affiliates until their Websites remove the false information and representations, and contain, at the top of the page in 14-point type the following disclosure:

The owners of this website may be paid to recommend Regal Assets. The content on this website, including the positive review of Regal Assets, the negative reviews of its competitors, and other information, is not independent or neutral. It may have been provided by Regal Assets.

*Defendants' SEO Conspiracy*

40.   Defendants have also conspired to cultivate the Websites with the intent to make U.S. Gold Bureau's own website, www.usgoldbureau.com, appear to be violating Google's Webmaster Guidelines, which Defendants know will cause Google to take "manual action" to affect the placement of the offending website within search results, from placing the offending website lower in search results to removing it altogether. U.S. Gold Bureau's website, on multiple occasions, has been placed very low among search results through Google manual action that is a direct result of Defendants activities identified below.

41.   U.S. Gold Bureau promotes itself online and generates business through results yielded by online search engines in response to queries from potential clients. U.S. Gold Bureau has invested millions of dollars in developing its reputation and position in the Google search engine. Specifically, U.S. Gold Bureau has invested millions of dollars buying certain search terms from Google,

to ensure that its website appears among the first results in response to a greater number of searches.

42. Search Engine Optimization ("SEO") involves cultivating the quality and popularity of one's website, as well as what key words and content appear on the website, all with the end goal of having one's website feature more prominently within a greater number of search engine results.

43. A large factor in SEO is link building; creating links to one's website that are posted on third-party websites. SEO is affected by (1) the quantity of those links; (2) Google's opinion of the quality of the third-party websites posting those links; and (3) what those third-party websites say about the website to which they provide a link.

44. "Black Hat SEO" is the practice of using disapproved techniques to increase a page's search engine ranking, with the end goal of raising the website's position in search results thereby directing search engine users to the website even if it isn't what they're looking for. Black Hat SEO techniques are prohibited under Google's Webmaster Guidelines.

45. The Websites generated by Regal, Felix and its Affiliate DOES 1-200 engage in Black Hat SEO techniques. These Black Hat SEO techniques intentionally create the false appearance that U.S. Gold Bureau is the party engaging in the Black Hat techniques and violating Google's Webmaster guidelines.

46. Each individual Website contains links to U.S. Gold Bureau's own website which would naturally result in U.S. Gold Bureau's own website rising in search results. However, because these Websites are identified by Google as spam and all contain links to U.S. Gold Bureau's site, Google believes U.S. Gold Bureau to be the center of a conspiracy in which it has created the spam Websites, or paid a third party to be included in them, in order to falsely build up its internet presence. Google identifies such behavior as harmful to consumers because

website operators are using spam to manipulate search results, while Google's aim is to provide search results sorted by their likelihood of being a legitimate site the consumer was looking for when entering search terms.

47. The Websites do not link to one another, but all focus on U.S. Gold Bureau, so Google does not identify the Websites as the acting force in the Black Hat SEO scheme. As a result, Google takes manual action against U.S. Gold Bureau, meanwhile the Websites themselves at times can actually work their way higher on search results than U.S. Gold Bureau. Even if the Websites ultimately suffer the same fate, they are created at a significantly lower cost in comparison to a legitimately developed and marketed websites. Also, more of the Websites are constantly being created to replace any that may receive manual action from Google.

48. While the Websites contain links to Regal, any action taken by Google against Regal does not harm Regal because if the genuine Regal website moves lower in search results, it is replaced by the Regal owned or controlled Websites that direct viewers to Regal's site or otherwise obtain the viewer's personal contact information for Regal, often without the viewer's knowledge. Additionally, Regal is continuously creating/encouraging the creation of more Websites with links to Regal that have not yet been identified by Google as spam, so no matter how many spam links are associated with Regal, they continuously have an increase in links not yet identified as spam to balance out their overall link profile.

49. The result of these links is a secondary attack on U.S. Gold Bureau, invisible to the average internet consumer. On the surface, the Websites falsely identify themselves as independent review sites that use false information about Regal competitors such as U.S. Gold Bureau to then promote Regal. However then the Websites are further engaging in behavior that, to Google, appears to be prohibited activity taken by U.S. Gold Bureau itself which results in sanctions against U.S. Gold Bureau's own site.

50. Upon information and belief, these Black Hat techniques are part of the content provided by Regal and Felix. The Websites specifically engage in these Black Hat techniques in order to both (1) divert potential customers of U.S. Gold Bureau to the Websites, and (2) to disparage U.S. Gold Bureau's own position in search engine results, a position that was developed after millions of dollars of investment. Rather than invest in purchasing search terms themselves, developing genuine positive links and otherwise engaging in fair competition with U.S. Gold Bureau, Regal is engaged in a strategy of sabotaging U.S. Gold Bureau's position.

51. U.S. Gold Bureau has been required to take extensive, costly, and time-consuming steps to disavow a relationship with these Websites in order to remove the manual action taken by Google.

52. Further, because Regal continues to compensate the DOES 1-200 based on traffic to Regal's site through the Websites, Regal, Felix and the Affiliate DOES 1-200 continue to engage in new Black Hat SEO techniques that injure U.S. Gold Bureau's search engine position anew.

*Damages to U.S. Gold Bureau From Regal's Activities*

53. The presence of so many Websites that contain false information about U.S. Gold Bureau has harmed U.S. Gold Bureau's reputation and caused potential customers to purchase from Regal instead.

54. The number of customers that view the "review" Websites and are therefore diverted to Regal is increased by the Black Hat SEO techniques that force U.S. Gold Bureau's own website far below the "review" Websites. Potential coin buyers whose search requests would otherwise lead to U.S. Gold Bureau are presented instead with websites they believe to contain independent reviews of U.S. Gold Bureau before reaching the U.S. Gold Bureau site itself, only to find themselves (or at least their personal contact information) diverted to Regal's website.

55.  Upon information and belief, Regal's activities are diverting an average of over 4,000 customers away from the U.S. Gold Bureau website every month, resulting in losses of approximately $600,000 in gross profit every month due solely to Regal's activities.

56. U.S. Gold Bureau has been contacted by individuals who had been intending to purchase precious metals from U.S. Gold Bureau, but ultimately purchased from Regal because they believed the negative "reviews" given to U.S. Gold Bureau.

## CLAIM I

### False or Misleading Advertising pursuant to 15 U.S.C. §1125(a)

(Against All Defendants)

57.  U.S. Gold Bureau repeats and realleges each and every allegations contained in Paragraphs 1 - 56 hereof as though set forth in full here.

58.  Defendants Regal, Felix, and DOES 1-200 have created a series of Websites that represent themselves to offer independent reviews of precious metals dealers and conceal the fact that they are owned or compensated solely by Regal, with the intention to mislead the public and divert potential customers from U.S. Gold Bureau to Regal.

59.  The Websites make "false designation of origin … which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" between the Websites and Regal, in violation of 15 U.S.C. §1125(a)(1)(A), by purporting to offer independent reviews of precious metals dealers when, in fact, the Websites are paid to promote Regal and that personal contact information shared with the Websites will be given to Regal in exchange for compensation.

60.  The "independent review" Websites contain false statements about U.S. Gold Bureau, and induce potential customers to share their personal contact

information without informing the customers that the information will be shared with Regal.

61.  The Websites make "false or misleading description[s] of fact, or false or misleading representation[s] of fact, which in commercial advertising or promotion misrepresents the nature, characteristics, [and] qualities" of U.S. Gold Bureau's goods and services, in violation of 15 U.S.C. §1125(a)(1)(B), by promoting Regal as the only safe and reliable company from which to purchase precious metals asserting false representations about U.S. Gold Bureau.

62.  U.S. Gold Bureau has been injured as a result of the above misleading activities of Defendants, primarily through a diversion of sales to Regal Assets and loss of its reputation, in amounts to be determine at trial.

63.  Unless enjoined, Defendants' actions will continue to cause substantial injury to U.S. Gold Bureau.

64.  Because this is an exceptional case involving calculated and willful misconduct by Defendants, U.S. Gold Bureau is entitled to recover treble damages, treble profits, and attorneys' fees under 15 U.S.C. §1117(a).

## CLAIM II

### False or Misleading Advertising pursuant to Cal. Bus. & Prof. §17500 *et seq.*

(Against All Defendants)

65.  U.S. Gold Bureau repeats and realleges each and every allegation contained in Paragraphs 1 – 64 hereof as though set forth in full here.

66.  Defendants Regal, Felix, and DOES 1-200 have created a series of Websites that represent themselves to offer independent reviews of precious metals dealers and conceal the fact that they are owned or compensated solely by Regal, with the intention to mislead the public and divert potential customers from U.S. Gold Bureau to Regal.

67.  The "independent review" Websites contain false statements about U.S. Gold Bureau, and induce potential customers to share their personal contact

information without informing the customers that the information will be shared with Regal.

68. The Websites are likely to confuse past and prospective customers who may believe the negative statements to be true and will influence the customers' decisions as to whether to purchase from U.S. Gold Bureau.

69. U.S. Gold Bureau has been injured as a result of the above misleading activities of Defendants, primarily through a diversion of sales to Regal Assets and loss of its reputation, in amounts to be determine at trial.

70. Unless enjoined, Defendants' actions will continue to cause substantial injury to U.S. Gold Bureau.

71. In addition to damages for lost sales, U.S. Gold Bureau is entitled to punitive damages pursuant to California Civil Code §3294 because Defendants acted with actual malice.

## CLAIM III

### Unfair Competition pursuant to Cal. Bus. & Prof. §17200 *et seq.*

(Against All Defendants)

72. U.S. Gold Bureau repeats and realleges each and every allegation contained in Paragraphs 1 – 71 hereof as though set forth in full here.

73. Defendants are competitors of U.S. Gold Bureau in the business of retailing precious metals coins to investors.

74. Defendants' aforesaid acts constitute unlawful, unfair and fraudulent business practices, as prohibited by the common law and by California Business & Professions Code §17200 read with §§17203 and 17205. They constitute violations of the FTC "Disclosure of Material Connections" rule codified at 16 C.F.R. 255.5, and the California False Advertising Laws, codified at California Business & Professions Code §§17500, 17508.

75. As stated in Paragraphs 17-24 hereof, the Websites violate the FTC disclosure rules because they fail to disclose that there "exists a connection

between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement" as is required by 16 C.F.R. §2525.5. In addition, the Websites fail to satisfy the FTC's requirement that endorser's "clearly and conspicuously disclose either the payment or promise of compensation *prior to* and in exchange for the endorsement or the fact that the endorser knew or had reason to know or to believe that if the endorsement favored the advertised product some benefit… would be extended to the endorser". 16 C.F.R. §255.5.

76. In addition, the Websites are unlawful as false advertising under Cal. Bus. & Prof. Code §1700 and, therefore, under California Bus. & Prof. Code §17200, because they "make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state … including over the Internet, [a] statement, concerning [ ] real or personal property or [ ] services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" in violation of those laws. Such statements include:

(a) False and misleading statement implying that U.S. Gold Bureau misleads customers by concealing a large number of customer complaints;

(b) Misleading statements about the Websites to induce consumers to provide their personal information to Regal;

(c) False and misleading statements concerning the Websites' independence and relationship with Regal in order to induce consumers to rely on recommendations by the Websites; and

(d) False and misleading statements about Regal.

77. By reason of Defendants' unlawful, unfair and fraudulent acts as described herein Defendants have caused, and are continuing to cause, substantial and irreparable damage and injury to U.S. Gold Bureau and to the public and Defendants have benefited from such conduct and will continue to carry out such conduct and to be unjustly enriched thereby unless enjoined by this Court.

78. U.S. Gold Bureau has no adequate remedy at law.

79. As a proximate and direct result of Defendants' unlawful, unfair and fraudulent conduct and acts of unfair competition, U.S. Gold Bureau has sustained damages in an as yet unascertained amount.

WHEREFORE, U.S. Gold Bureau prays this Court for judgment on this Complaint:

(a) ordering DOES 1-200 and Regal to remove and destroy all unlawful, unfair and fraudulent Websites referring to U.S. Gold Bureau;

(b) awarding U.S. Gold Bureau disgorgement of any and all profits earned by Regal and DOES 1-200 from publication of the Websites;

(c) awarding U.S. Gold Bureau treble damages, treble profits, and attorneys' fees under 15 U.S.C. §1117(a);

(d) awarding U.S. Gold Bureau reimbursement of U.S. Gold Bureau's costs and attorney's fees in investigating this matter and bringing this lawsuit under Cal. Code of Civil Procedure §1021.5; and

(e) permanently enjoining DOES 1-200 and Regal from any unlawful activity under Business and Professions Code §17203 and awarding U.S. Gold Bureau restitution in the amount of any sums acquired by DOES 1-200 and Regal by means of such activity, plus exemplary damages as proven at trial.

Dated: December 18, 2014

_s/Armen R. Vartian_____
Armen R. Vartian
Attorney for Plaintiff